Good morning and welcome to today's oral argument. Just a couple of announcements before we begin. I know that some of you are familiar with our traffic light timing system, but in case you're not, the light will display green when you're conducting your argument. When you have two minutes left and you're a lot of time, the light will turn yellow and then the light will turn red when your time has elapsed and we ask that you please quickly conclude your argument at that finish your answer. The second thing is I just want to remind you that we are familiar with your case. We've read your briefs and so you can feel free to dispense with long introductions and go directly to your argument, the important parts. Our first case of the morning is case number 21-12007, Singh v. U.S. Attorney General and we have the attorney for the petitioner appearing by Please let us know if you have any, if you can't hear us or you have any issues with the technical aspects and I see that you've reserved five minutes for rebuttal. You may begin when you're ready. Good morning, Your Honor. May I please report? My name is Jacqueline Cronin and I'm appearing on behalf of the There are three major arguments that we are presenting here today. Remember Singh, a Sikh man, a foreigner, and a specific man from India, entered the United States, filed for asylum in New York. In the middle of the pandemic, he was moved to Atlanta and he was in detention. We had a trial while he was detained. We do think that there were three major factors that both the immigration judge and the BIA erred. They erred in making a decision in three different ways. Number one, they violated his due process violations because he did not get a chance to have a full and fair hearing. The second aspect is we believe that the judge did not, both the judge and the BIA erred in making decisions because they did not see the record as a whole. In his decision, the immigration judge did not rely on supporting documents and the Bajrang documents, did not even misunderstand the nature of the claim, misunderstood the religion claim, misunderstood the State Department reports, did not account for that the Indian petitioner is a minority with less than 1.7 percent of the population and will be targeted based on his politics, his religion, and his social group of also being a former. Additionally, we also think, Your Honor, that the immigration judge and both the BIA erred in making a separate convention against torture analysis because both in his question period, his statement, and the oral testimony, the petitioner constantly talked about police persecution and the police were visiting, but the judge did not even do the separate analysis for that in his decision. Regarding the due process, Your Honor, we believe that his rights were violated for the first reason when the immigration judge denied change of venue under Madhura Firmawala. Can you point to any prior case where there's been a finding of a due process violation for refusal of change of venue? Yes, Your Honor. There is a 43 U.S. AG 2007 case. There is a Madhura Firmawala case where there was a due process violation done on terms of change of venue. However, both of these cases are factual. What's the name of that case? Your Honor, I'm sorry. 43 U.S. AG 491 F3D1277. It's the 2007-11 circuit case. Thank you. Your Honor, I'm sorry. Let me answer this question, counsel. I think I may agree with you that it was unreasonable for the immigration judge to rely on your failure to oppose the government's change of venue motion because it looks like the government did not serve that motion on you. But in order for us to find a due process violation, you have to show that the outcome of Mr. Singh's hearing would have been different, and that's a pretty high bar. So would you explain how you've shown that the outcome would have been different? Yes, Your Honor. Your Honor, first of all, I would like to highlight that his hearing was pending in New York. There's a lockdown that happened in March of 2020, exactly today, three, two years ago, where lawyers and law officers are not considered essential workers. He had a criminal arrest. He has lived in New York, New Jersey area his entire life. He had a criminal arrest. He was then taken by immigration, moved twice, first to Virginia, and then finally to Atlanta. He had no ties to Atlanta except that he was detained there. He had witnesses. When we submitted our motion to change the venue, Your Honor, we submitted, he had two witnesses who were both also they submitted proper testimony for the trial that the judge did not account for during the final trial regarding his current activities, his religion, going towards future prosecution claims. The second issue was he had attorneys in New York. We never, because of the travel restrictions and because of New York being really the epicenter of the COVID-19 issue at that time, we couldn't go down to Atlanta to meet the respondent in jail. We never had the opportunity. Your Honor, I can also point out. Why couldn't you talk with your client on the phone or on Zoom? Your Honor, at that time, James had not really started the Zoom preparation. I would also like to highlight that during the final hearing, the hearing happened telephonically where the judge made a demeanor notification. However, the attorney who did the hearing notified three times that she could not see the petitioner. She could not even see what was happening because it was done completely telephonically. Didn't you request a telephonic hearing? Your Honor, we requested a telephonic hearing the day before because we never even thought that a motion to continue was denied. We had argued on the date of hearing. Additionally, Your Honor, we argued. The only reason, and the main attorney also on the date that they argued, the only reason we asked for telephonic and we appealed telephonic because we did that in good faith. We did that because we had submitted evidence. We wanted the judge to understand that the respondent of the petitioner, Mr. Singh, had complete ties to the New York City area. His rights would not have been violated had he been moved here. Therefore, that would have changed the entire outcome of the hearing. I hear you saying that it would have changed the outcome of the hearing, but I'm not sure why it would have changed the outcome of the hearing. Your Honor, we would have a chance to meet with the respondent. We would have had a chance to go over his testimony with him. We would have a chance to review the records. The respondent did not even get a chance to review the documents that were submitted on his behalf. We submitted documents because even India was under complete lockdown. People were getting arrested to get the documents here. There were also country conditions that were changing at the time that the judge also did not account for before the trial and even after the trial. Presumably, you've now had a chance to review the documents and to talk with your client and those sorts of things. I'm not hearing anything that you would have pointed out that you didn't point out or anything that you would have known that would have changed the result of that proceeding. Your Honor, I would like to point out on page 203 of Record Volume 1, page 205, 206, 212, 213, 247, 246, 255, and 256, at all of those times, the respondent constantly talked about memory issues. He could not account. At one point, he started his hearing before even the trial had started. The attorney asked, how old is your daughter? He said, 23 years old. This is 2020. Yeah, but she's 23 years old. Going towards his mental issue, we did not get an account for his mental issue until we actually started the trial that we had not anticipated at that time that we would have. Additionally, the WebEx, the video hearing, even vaccines were not available when the hearing happened. So even on the day of the trial, one of our witnesses was sick, and we asked the judge for a continuance so that we can have, at least because people were getting sick and then they had to quarantine. I do understand that that was because nothing like that had ever happened. That makes it a unique situation. However, all of that combined, I think that could have been ignored, had that client been moved to New York, New Jersey. And in fact, while the judge decided... Excuse me. I don't understand why there would have been fewer COVID restrictions if you had moved to New York or New Jersey. Your Honor, at the very least, we could have... COVID restrictions there, really. We could have gone down to Elizabeth or we would have met the client in New York or New Jersey. At that time, even getting on the flight was difficult for us. And the attorney did make that comment with the judge on three different occasions on the same day. Repeatedly, one of the reasons is, in terms of being represented by a counsel, is being adequately represented. Indeed, in terms of the counsel had an opportunity to present and review the document and review the file with the respondent, which we never got the opportunity for. Additionally, had we met with the respondent ahead of time, we would have understood any underlying memory issues or any demeanor issues that we couldn't figure out until we did the trial on that case. Your Honor, additionally, his criminal case was still pending in Jersey. And when we did talk about it factually with the judge, that there was no... Because we were discussing on the matter of Vermont, that other than that he is detained in Atlanta, he has no ties to Atlanta. His criminal case was pending in Jersey. His attorneys were in Jersey. His witnesses were in Jersey. He had lived in New York, New Jersey for almost five years. So, in terms of the justice, it would have been... We considerably think the outcome would have been different had he been here. You're eating into your rebuttal time now, so if you'd like to conclude, we'll give you your full time for rebuttal. Your Honor, additionally, we would like to say... Sorry, I would like to say that the judge did not see the whole record, the record as a whole. He misinterpreted all of the documents from the wife. Did not account for that he was... Did not even make a separate analysis that he was accounted for due to his political and religious persecuted. He made... He fundamentally ignored country conditions and breached contingents that were arbitrary and made evidence of what happened in the present case. We'll now hear from counsel for the government. Good morning, Your Honors. John Williams on behalf of the government. This case comes down to the fact that the immigration judge found the petitioner not credible. And based on that denied as asylum application and all related relief, the board affirmed the immigration judge's determination that petitioner lacked credibility. The agency here reviewed the total record and cited specific encoded reasons, including an adverse demeanor finding, along with multiple inconsistencies. This board has recognized that the immigration judge is in the best position to view a witness and a petitioner. And here the immigration judge noted several factors regarding the adverse demeanor finding. The petitioner during the hearing was evasive. He did not want to answer questions. He responded to questions on cross-examination that he lacked memory. The immigration judge observed that, in quote, visibly, the petitioner did not want to answer questions that the Department of Homeland Security was asking him. The petitioner refused to give details about his departure from India. When asked, the petitioner stated about who paid his tickets to leave. He stated, I don't know who paid my tickets. It was God who paid for my tickets. When asked who took him to the airport, he responded that I was scared my brain wasn't working. I don't know. The petitioner repeatedly, throughout the hearing, responded to questions from the Department of Homeland Security with, my brain is not working. When asked if he ever traveled outside of India before coming to the United States, the petitioner stated no. However, clearly, he was presented with his passport, which indicated that he had traveled outside India. Here, under the Real ID Act, the agency's adverse demeanor finding supports the adverse credibility finding, and the court need not conduct any further analysis. Let me ask you about the motion for change of venue and for continuance. In Mr. Singh's counsel's affidavit in support of the motion, she says she was unable, and counsel repeated that today, that she was unable to visit Mr. Singh in detention and thus properly prepare him for the hearing. Couldn't that constitute prejudice given that the immigration judge relied on his demeanor and credibility in its findings? Well, we need to step back in time and look at the total chronology of the case. In this instance, the Department of Homeland Security moved for a change of venue in August 2020 from New York to Georgia. On August 10th, 2020, they moved forward on August 10th. It was granted on August 24th. During that time, and to go back in time, the case had been docketed back in 2017. In preparation for this case, the counsel had been given three years to prepare for this case and to prepare the petitioner and submit affidavits. During the time when the change of venue had taken place, it wasn't opposed by counsel, but during that time, they appeared for several years. My understanding is that, according to the record, that counsel was not actually served with the change of venue that the government filed. Mr. Singh was, but I don't think counsel was served, so I don't know that you can use the fact that there was no opposition to help you. Well, after the change of venue, they appeared telephonically during several hearings. On November 2nd, 2020, there was a hearing. Prior to that, on November 13th, there was a separate hearing. In October, there was a separate hearing. During all these times, counsel appeared for these hearings. When was the motion to change venue back filed? The motion to change the venue from New York to Georgia was filed on August 10th, and it was granted on August 24th. When was Mr. Singh's motion to change venue back to New York? Back to New York. That was made on October 28th, 2020. Were there telephonic conferences before that was filed? There were. Let's see. There was a telephonic hearing on... There were several telephonic hearings prior to that. There were hearings held on September 8th, 2020, September 22nd, 2020, October 16th, 2020. All of these hearings happened prior to October 28th, and during those hearings, counsel or colleagues of the firm that was representing appeared during those hearings. Did they make any mention of venue during those hearings? No. It wasn't until October 28th, 2020, when they filed a motion to change venue. The immigration judge, specifically on September 22nd, 2020, reset the case to October 16th, 2020, in response to counsel asking for time to provide additional evidence. Despite the case having been pending for over three years, the immigration said, I'll reset it one last time. It was reset to October 16th, 2020, and there again, it was reset again after that. With regard to the actual hearing, there are regulations that are in the record and cited that for some time, telephonic hearings have been going on. The petitioner was given the opportunity, the petitioner himself can choose to appear on video. In this instance, the counsel filed a motion to appear telephonically, as they had done, I believe, previously. Based on their request to appear telephonically, the immigration judge granted that request. That's how they chose, they requested to appear telephonically, and so they did. You know, and so you go back to the length of time, over three years that the case was pending, the procedure, the historic procedure of this case, each and every time, counsel had a chance throughout this time to submit evidence, to obtain witness affidavits, and they did in any number of instances. The basis for their motion for continuance and their request for change of venue involving the witnesses, these are two witnesses that are here in the United States, presumably, and would have testified to what the petitioner had done during his time in the United States. So they had time to obtain affidavits from these witnesses, one. Two, these witnesses would not have, what was proffered was not truly material to the underlying claim of this petitioner. So the petitioner here has not shown, one, that there was due diligence on preparing for the case. They requested these telephonic hearings and so forth, and they did not demonstrate, they have not demonstrated that there was harm or prejudice that took place in this instance. The record is clearly voluminous, and throughout the record, the immigration judge and the board have cited to and indicated they looked at the totality of the circumstances in this case. And going back to the crux of this matter and why they found and denied his application was that he lacked credibility. And it is throughout the record that the petitioner did not want to answer questions and wasn't forthright. During the demeanor hearing, I think, you know, at the end, the immigration judge said, despite the demeanor, there are also several inconsistencies. And so those are cited. Timing of the second attack, there was inconsistencies. Whether or not the petitioner filed a complaint or a police report after the second incident, whether he obtained medical treatment, inconsistencies with regard to that. He was given a chance to explain these inconsistencies, and again, he didn't. Following cross-examination by the Department of Homeland Security counsel, his counsel was allowed to go back and ask questions and try and find out some sort of explanation as to why the petitioner gave inconsistent responses and or just did not want to respond at all. Notably, at the end, after citing all of these inconsistencies and the adverse demeanor, the immigration judge stated there were several other examples of inconsistencies in the case today, but the noted inconsistencies above are sufficient for an adverse credibility finding, which is what I would suggest to the court today. That clearly the adverse demeanor, the multiple inconsistencies are supportive of the adverse credibility, which is what the agency found and the reason why they denied his case. Even if you accept he was credible and these incidents occurred, what evidence did the petitioner have to show the government was involved and somehow this was connected to political persecution? Well, this goes back to his presentation of facts that he had submitted evidence from his wife, an affidavit that these events took place, but again... The events were two beatings, right? Two beatings. He was stopped in his car. Who was he stopped by, he claims. They're unidentified individuals, so... I'm trying to get at what evidence there was to show that these were private actors or who knows who they were versus carrying his burden proof to show it was government persecution. Right. What evidence is there to help? That's the other thing. The evidence is lacking, but here the agency, the testimony and the medical documents and the affidavits from his wife, they were inconsistent. And so the agency here decided the case based on credibility without moving to look at, having to have to look at because they didn't believe his testimony and they didn't believe the affidavits. I got that. I was just asking you assuming that there were some credibility problems here and there wasn't substantial evidence. And if you accepted his testimony, what did you testify about that showed any government involvement? Well, I don't know that he testified to anything. I'm not saying we'll reach a ground. It's not reached by the BIA. If you go to the merits, you might have to send it back. But I was just curious if there was any such evidence. It goes to whether the continuance was really needed or not. And here, it was the day of November 13th. There was a hearing. It was scheduled to have a merits hearing and the petitioner made the request for the motion for continuance. So it was that late date when that was made. So you had had several hearings before, obviously three plus years to submit evidence. I see my time is winding down. I would just note that the petitioner has not presented compelling evidence to overturn the agency's decision. Substantial evidence in the record supports the agency's decision and the government would ask this court to deny the petition for review. Thank you. Ms. Narang, rebuttal? Yes, Your Honor. Thank you. Your Honor, first of all, the venue was initially changed when I received the record from New York to Virginia and from Virginia to Atlanta. Second is when we filed a motion to change the venue, the department never opposed it until Judge Gallo denied it. And that was in Atlanta. We did appear in September at the mass hearing and at that time there were confusions because we had to call the court whether we had to come down there or we had to do telephonic. We filed a telephonic hearing. We appeared because at that point our strategy was to file a bond motion. By the time, even sometimes judges do change venue even on the trial. We filed a motion to change the venue, which was denied. We then filed continuance, which we never got the response for. Then we filed a motion to change the venue. And this was the chronology up until November 13th, the day of the trial. The judge said, in this particular case, to the attorney representing that you filed telephonic the day before, and we responded, the only reason we filed it the day before was because we couldn't have the guy sit in front of you, Your Honor, and not have an attorney there because we couldn't be out there. And that's one of the reasons we asked for continuance before because we said we never had the opportunity to even meet with the guy so far. And even though we had made multiple attempts, but because of the lockdown, because of CDC guidelines, because we are not the essential workers at that time, we could not travel to Atlanta. And actually, even at that point, even the detention center was having certain outbreaks. Additionally, even after the trial, we asked for continuance in order to have witnesses present to respond to the department's arguments about credibility. None of the discrepancies were substantial. Additionally, the judge misread the record. There is an affidavit by the wife about going to the police. The wife said, we didn't go to the police. The wife never said that the respondent never went to the police after the second attack. But the judge made that interpretation. The judge, as in the entire case, missed the wife's affidavit that talks about the husband's political work, political membership with Srimanjit Singh, Shruti Nepali Dalai Lama's Salman party. Misread the two affidavit of witnesses by talking about that they saw him getting beaten up. They heard that he was beaten up by the members of the BJP party. When the respondent said that they came and their faces were covered, but he identified both in his credible fear and even in his testimony about the logo of a political party, which the judge and both BIA members... Do you have a response to Judge Hull's question about what evidence he had that these were government actors? Yes, Your Honor. What evidence is there to support that? Your Honor, I believe that the judge also asked what evidence he had about his own political activities. Additionally, he had a party letter. His party letter mentioned the attacks. He had two eyewitnesses that he overheard talking about them saying...who overheard the incident and specifically mentioned in their affidavit that they overheard him say, You leave your party. Join our party because you didn't listen to us. This is why we are hitting you. So even though the wife did not witness, we had independent two eyewitnesses who talked about the attacks. Additionally, Your Honor, I believe that he was consistent throughout, given the circumstances. Even in his redirect, he said his memory has been faulty and he doesn't remember everything. So, for example, at one point he said, I was attacked in January and then I was attacked three or four months later. But three or four months later, he couldn't account for that it was, he said October, but not April. So the judge only had nitpicks, little things that went with his conclusion, did not see the whole record in the entirety. The judge definitely did not account for the ongoing violence that was happening in India in 2020. Additionally, regarding having three years time, Your Honor, his hearing was scheduled for June of 2020. The situation for asylum cases are evolving because it is both based on personal and confidential circumstances. The documents in New York would not have been due until May of 2020. We would have started to work on the file with the respondents beginning in January and February. But because people were getting sick and by the time it came out to the news, it was shut down in March. And courts were shut down starting March 21, 2020, even in New York. And we didn't know at what point they were opening. So we did not start working on the documents until much after. And by that time...  No, Your Honor. The charges, the criminal charges were dismissed. Additionally, Your Honor, we even... He's not in detention, immigration detention. No, Your Honor. I'm only talking about detention now. When he came in through Arizona, he came in through Arizona, right? That's inadmissible. Yes, Your Honor. And how long was he in detention before he got out of detention? Your Honor, a few months. I'm just curious what other evidence he could have presented on a motion to reopen if he... When did he get out of detention? Oh, in 2020, Your Honor. When in 2020? Your Honor, I believe he got out in 2021, but I don't have an exact date. But he's been out of detention since at least 2021? Yes, Your Honor. And maybe sometime in 2020? Your Honor, I don't want to give an incorrect date. I'm not sure when he was given. But you've answered my question. Thank you very much. Thank you.